AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Black LG Cellphone Model: LM-X220PM
MEID: 35963509282961
S/N: 902VTKE0286461

)
)
)
)
)
)

Case No.    19MJ3233

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the    Southern    District of    California   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 952, 960, and 963 | Importation of controlled substances and conspiracy |

The application is based on these facts:

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Whitney Faber, SA, Dept. of Homeland Security
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____

_____
*Judge's signature*

City and state:   San Diego, CA

Hon. Linda Lopez, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

> Black LG Cellphone Model: LM-X220PM
> IMEI: 35963509282961
> S/N: 902VTKE0286461
> (**Target Device**);

The **Target Device** is currently in the possession of U.S. Customs and Border Protection at 9495 Customhouse Plaza in San Diego, CA, 92154

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of February 13, 2019 to May 13, 2019:

a.   tending to indicate efforts to import methamphetamine, or some other federally controlled substances from Mexico into the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

d.   tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.**

## AFFIDAVIT

I, Whitney Faber, Special Agent with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), being duly sworn, hereby state as follows:

### INTRODUCTION

1.     This affidavit supports an application for a warrant to search the following electronic device, as further described in Attachment A:

  a.     Black LG Cellphone Model: LM-X220PM
         MEID: 35963509282961
         S/N: 902VTKE0286461
         (**Target Device**);

and seize evidence of crimes, specifically, violations of Title 21, United States Code, Section(s) 952, 960, and 963, as more particularly described in Attachment B.  This search supports an investigation and prosecution of JESSICA MARIE GOMEZ for one or more of the crimes mentioned above.  A factual explanation supporting probable cause follows.

2.     The **Target Device** was seized from GOMEZ incident to her arrest on May 12, 2019 at the Otay Mesa, California Port of Entry ("POE"), as she attempted to smuggle methamphetamine into the United States. The **Target Device** is currently in the possession of the Department of Homeland Security.  Since its seizure, the Target Device has been held securely at the U.S. Customs and Border Protection Permanent Vault at 9495 Customhouse Plaza in San Diego, CA, 92154, where it is currently located.

3.     Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that a search of the **Target Device** will produce evidence of one or more of the aforementioned crimes, as described in Attachment B.

4.   The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause for the requested warrant.

### EXPERIENCE AND TRAINING

5.   I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I am also a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure. I am authorized under Rule 41(a) to make applications for search and seizure warrants and to serve arrest warrants. I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

6.   I am a Special Agent (SA) with ICE-HSI and have been so employed since September 2018. I am currently assigned to the Deputy Special Agent in Charge, San Ysidro Office, Contraband Smuggling Group 5, and my duties include investigating the trafficking of illicit controlled substances and the importation and distribution of illegal substances. I have training and experience in multiple investigative areas, to include conducting investigations and making arrests based on violations of Title 21, United States Code Sections 952, 960, and 963.

7.   I have had approximately 26 weeks of intensive training at the Federal Law Enforcement Training Center at Glynco, Georgia. These 26 weeks were comprised of approximately 12 weeks of the basic criminal investigator training program and approximately 14 weeks of HSI Special Agent Training. I have received training in

identifying various controlled substances and conducting Title 21 controlled substances investigations.

8.    Prior to my position as an HSI Special Agent, I was employed as a United States Border Patrol (USBP) Agent from March 2003 until September 2018. As a USBP Agent, I conducted many criminal investigations involving violations of federal and state laws including, but not limited to, alien smuggling, narcotics smuggling, kidnapping, extortion and organized criminal activity.

9.    I have personally participated in and conducted investigations of violations of various State and Federal criminal laws, including those related to narcotics violations. I have arrested or participated in the arrest of persons for violations of the Controlled Substances Act. In these cases, I have conducted interviews with the arrested persons and their associates. I have conducted surveillance of narcotics smugglers as they conduct their smuggling activity while crossing the border from Mexico into the United States. Through these investigative activities, I have gained a working knowledge and insight into the typical activity of narcotics smugglers, and the structure of their narcotics smuggling networks.

10.    Based upon my experience investigating drug smuggling, my training, and my consultation with other investigators who have experience investigating drug smuggling in near the border, I understand that drug smugglers will seek to smuggle drugs from Mexico to the United States by hiding the drugs in hidden compartments of cars, and in non-factory compartments (*i.e.*, compartments that the manufacturer did not design for ordinary use). Smugglers will then drive north from Mexico and seek to pass through POEs with the drugs undetected. (I am also aware that such individuals will sometimes try to generate a history of crossings to show that driving through a POE is ordinary behavior for them.) When they arrive in the United States, smugglers will take the drugs to a discreet location to transfer them to other people involved in the distribution chain, who can then send the drugs to other locations for downstream distribution.

11.    Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

      a.    Drug traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

      b.    Drug traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

      c.    Drug traffickers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

      d.    Drug traffickers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

      e.    Drug traffickers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

      f.    Drug traffickers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

      g.    The use of cellular telephones by conspirators or drug traffickers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, videos, call logs, address book entries, IP addresses, social network data, and location data.

12. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

a.    tending to indicate efforts to import methamphetamine, or some other federally controlled substances from Mexico into the United States;

b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers– used to facilitate the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

c.    tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.    tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

13.     Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for GSM cellular telephone subscribers.  Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages.  Some of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

14.     Furthermore, based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that drug conspiracies often require detailed and intricate planning to successfully evade detection.  Consequently, drug conspiracies often involve planning and coordination for several months—this planning often occurs through mobile telephones.  Additionally, based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that coconspirators are often unaware when a fellow coconspirator has been arrested and will attempt to communicate with that coconspirator via mobile telephone after his or her arrest to determine the whereabouts of drugs that are being transported.

**FACTS SUPPORTING PROBABLE CAUSE**

15.     According to a report written by CBP Canine Enforcement Officer L. Manis, while performing pre-primary roving inspection duties at the Otay Mesa, California port of entry ("POE") on May 12, 2019 at approximately 8:15pm, she encountered GOMEZ driving a 1998 Lexus ES 300 sedan bearing California license plate 4ARF829 (the "Lexus").  Officer Manis screened the Lexus with her Narcotics & Human Detection Dog (NHDD), "Lotta" (#160197), and received an alert from Lotta to the trunk area of the Lexus. Officer Manis opened the trunk of the Lexus for further inspection. Officer Manis then received a second alert from Lotta to the rear wall of the trunk behind the rear seat.

16.    According to a report written by CBP Officer C. Rodriguez, Officer Rodriguez arrived to assist Officer Manis. Officer Rodriguez noted GOMEZ was talking on her cell phone. Officer Rodriguez asked GOMEZ to turn off her cell phone. Officer Rodriguez obtained two negative customs declarations from GOMEZ for any goods and/or merchandise entering the United States. During the inspection, GOMEZ stated she was the owner of the Lexus but she had not registered it yet. GOMEZ told Officer Rodriguez she was entering the United States in route to Palm Springs, CA.

17.    According to a report written by CBP Officer G. Gomez, Officer Gomez inspected the Lexus at approximately 8:29 p.m. utilizing the Z-Portal Non-Intrusive Inspection system. Officer Gomez noticed anomalies in rear seat area of the Lexus.

18.    According to a report written by CBP Officer J. Harris, Officer Harris searched the Lexus in the vehicle secondary lot. Officer Harris observed packages concealed between the rear seat and trunk of the Lexus. Officer Harris removed a total of 19 packages. The contents of the packages field-tested positive for the properties of methamphetamine.  Officer Harris then notified Homeland Security Investigations of the seizure. Officer Harris placed GOMEZ under arrest. The total weight of the nineteen packages was approximately 10.86 kilograms (23.94 pounds).

19.    I was notified of the event and responded to the Otay Mesa POE. I further seized the Lexus, the methamphetamine packages, and the **Target Device**.

20.    GOMEZ was advised of her Miranda rights in the English language. GOMEZ waived her rights, and I subsequently conducted a recorded interview of GOMEZ.

21.    GOMEZ denied knowing the methamphetamine was concealed within the Lexus. GOMEZ stated that she went to Rosarito, Mexico approximately two weeks ago to visit her mother, Sandra Cornejo. GOMEZ stated that her mother gave her the Lexus as a surprise gift, and that the Lexus had been in her possession since she received it from her mother. GOMEZ stated that her mother purchased the vehicle from the dealer listed on the registration. GOMEZ stated that the same day she received the Lexus from

her mother, she crossed the border and drove to Desert Hot Springs, CA. GOMEZ stated that she has been using the Lexus to commute for work, and further stated that she had not taken the Lexus to a mechanic or had any maintenance performed. GOMEZ stated that no one else had driven the Lexus since she received it from her mother. GOMEZ stated that she returned to Rosarito approximately three days prior to her arrest to visit her mother and daughter.

22.    GOMEZ was given the opportunity to use the **Target Device** during the interview, and she entered her password and called a contact identified as "Mandigo Blade" at 760-461-0556. GOMEZ informed Mandigo Blade that she had been detained at the border. Mandigo Blade informed GOMEZ that he was in Las Vegas and could not help her, and the conversation ended.

23.    Given the facts surrounding GOMEZ's arrest, and based upon my experience and training, as well as consultation with other law enforcement officers experienced in drug smuggling investigations, I submit that there is probable cause to believe that information relevant to the smuggling activities of GOMEZ will be found in the **Target Device**. Such evidence, which could be in the form of communications, records, data (including but not limited to emails, text messages, other social messaging applications), photographs, audio files, videos, or location data, is evidence:

      a.    tending to indicate efforts to import methamphetamine, or some other federally controlled substance from Mexico into the United States;

      b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance from Mexico into the United States;

d.   tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States;

e.   tending to identify the movement of proceeds associated with the trafficking of methamphetamine, or some other federally controlled substance that was imported from Mexico into the United States;

f.   tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

g.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

24.   Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in drug trafficking investigations, and all the facts and opinions set forth in this affidavit, there is probable cause to believe that information relevant to the drug smuggling and trafficking activities of GOMEZ, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**.  For the reasons set forth above, I request permission to search the **Target Device** for items listed in Attachment B for the time period from February 13, 2019 up to and including May 13, 2019, which was the day following GOMEZ's arrest.

## METHODOLOGY

25.   It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and/or serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile

1   devices today can be simple cellular telephones and text message devices, can include
2   cameras, can serve as personal digital assistants and have functions such as calendars
3   and full address books and can be mini-computers allowing for electronic mail services,
4   web services and rudimentary word processing. An increasing number of
5   cellular/mobile service providers now allow for their subscribers to access their device
6   over the internet and remotely destroy all of the data contained on the device. For that
7   reason, the device may only be powered in a secure environment or, if possible, started
8   in "flight mode" which disables access to the network. Unlike typical computers, many
9   cellular/mobile telephones do not have hard drives or hard drive equivalents and store
10  information in volatile memory within the device or in memory cards inserted into the
11  device. Current technology provides some solutions for acquiring some of the data
12  stored in some cellular/mobile telephone models using forensic hardware and software.
13  Even if some of the stored information on the device may be acquired forensically, not
14  all of the data subject to seizure may be so acquired. For devices that are not subject to
15  forensic data acquisition or that have potentially relevant data stored that is not subject
16  to such acquisition, the examiner must inspect the device manually and record the
17  process and the results using digital photography. This process is time and labor
18  intensive and may take weeks or longer.

19       26.    Following the issuance of this warrant, I will collect the subject
20  cellular/mobile telephone and subject it to analysis. All forensic analysis of the data
21  contained within the telephone and its memory cards will employ search protocols
22  directed exclusively to the identification and extraction of data within the scope of this
23  warrant.

24       27.    Based on the foregoing, identifying and extracting data subject to seizure
25  pursuant to this warrant may require a range of data analysis techniques, including
26  manual review, and, consequently, may take weeks or months. The personnel
27  conducting the identification and extraction of data will complete the analysis within
28  90 days, absent further application to this court.

**CONCLUSION**

28.     Based on all of the facts and circumstances described above, there is probable cause to conclude that JESSICA MARIE GOMEZ used the **Target Device** to facilitate violations of Title 21, United States Code, Section(s) 952, 960, and 963.

29.     Because the **Target Device** was promptly seized during the investigation of JESSICA MARIE GOMEZ's trafficking activities and has been securely stored since that time, there is probable cause to believe that evidence of illegal activities committed by JESSICA MARIE GOMEZ continues to exist on the **Target Device**.  As stated above, I believe that the date range for this search is from February 13, 2019 to May 13, 2019.

30.     WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the **Target Device** described in Attachment A, and to seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Whitney Faber
Special Agent
Homeland Security Investigations
Department of Homeland Security

Subscribed and sworn to before me this ___1ˢᵗ___ day of August, 2019.

_____
The Honorable Linda Lopez
United States Magistrate Judge

11